IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| UNITED STATES OF AMERICA, | ) | CR 12-96-GF-DLC |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| ABEL "ALEX" ALVAREZ, | ) | |
| Defendant. | ) | |

Defendant Abel "Alex" Alvarez has filed a motion to suppress his statements resulting from interrogation in this matter. (Doc. 15.) Defendant challenges the polygraph examination administered on him by law enforcement under the Fourth Amendment and the incriminating statement he made following the polygraph under the Fifth and Sixth Amendments. The motion will be denied because no constitutional violations occurred during Defendant's polygraph or interview.

## I. Facts

Defendant agreed to the administration of a polygraph examination in connection with allegations that he sexually abused a nine year old girl named S.P. Defendant voluntarily traveled to Missoula and arrived with his wife at the Missoula FBI Office at 11:00 a.m. on November 2, 2012, to take the polygraph. FBI Special Agent Stacey Smiedala interviewed Defendant in a conference room for a total of approximately two hours and forty minutes. The agent showed Defendant an electronic version of a FD-395 "Advice of Rights" form informing Defendant of his Miranda rights. Defendant read the form aloud, acknowledged that he understood his rights, and signed the form electronically. Defendant was also shown a FD-328 "Consent to Interview with Polygraph" form informing Defendant of his right to refuse the polygraph examination, to stop the test at any time, and refuse to answer any questions. Defendant read the second form aloud, acknowledged that he understood it, and signed it electronically. Agent Smiedala then explained the interview process including the use of the polygraph, and began the interview by exploring Defendant's biographical history. Agent Smiedala asked Defendant if he ever had sexual contact with S.P. or any other child, which Defendant denied.

Agent Smiedala performed the polygraph examination on Defendant and

determined the results indicated Defendant was being deceptive. When he informed Defendant of such Defendant admitted he lied during the polygraph questioning and described performing a sexual act on S.P. while she slept in his home approximately two years prior. Defendant agreed to a recording of his confession and a summary eight minute statement was recorded. Defendant was indicted on one count of aggravated sexual abuse on December 5, 2012, and filed a motion to suppress his statement on January 11, 2013 (doc. 15).

## II. Discussion

### A. Fourth Amendment

A polygraph examination is not a Fourth Amendment search. The Fourth Amendment protects the right of citizens to be free from unreasonable governmental searches and seizures. U.S. Const. amend. IV.; *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Reasonableness on behalf of the government "is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Few federal courts have published opinions on the issue of whether a polygraph examination

constitutes a Fourth Amendment search, but those examining the issue have ruled that it is not. *Stehney v. Perry*, 907 F. Supp. 806, 822 (D.N.J. 1995), aff'd 101 F.3d 925 (3d Cir. 1996); *United States v. Jordan P.W.*, 168 Fed.Appx. 150 (9th Cir. 2006)[1]; *United States v. Woodenlegs*, 2011 WL 3568337 (D. Mont.).

The following governmental intrusions are searches under the Fourth Amendment: "penetrat[ion] beneath the skin," *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989), to extract inorganic material, *Winston v. Lee*, 470 U.S. 753, 760 (1985) (bullet), bodily fluid, *Skinner*, 489 U.S. at 616–17 (urine); *Schmerber v. California*, 384 U.S. 757, 769 (1966) (blood), and "deep lung" breath, *Skinner*, 489 U.S. at 616. Handwriting samples, fingerprints, voice recordings, and dental examinations are not considered searches. *Stehney*, 907 F. Supp. at 823. The *Stehny* Court determined that "[t]he incidental contact involved in attaching polygraph equipment and the rather innocuous readings of heart rate, respiration and perspiration changes are hardly more intrusive than a dental examination" in holding a polygraph is not a Fourth Amendment search.

Defendant cites no cases supporting his argument that a polygraph is a search under the Fourth Amendment. The Court agrees with the *Stehny* analysis

---

[1] The Court recognizes that this opinion is unpublished and thus not binding precedent and generally not cited under Ninth Circuit Rule 36-3(c). However, it is directly on point and its reasoning is persuasive.

that the procedure involved in a polygraph examination does not rise to the level of a Fourth Amendment search requiring a warrant and probable cause. However, even if the polygraph did constitute a search, Defendant consented to it, so no constitutional violation occurred.

**B. Voluntariness of Defendant's Confession**

A confession must be made voluntarily pursuant to the Fourteenth Amendment. *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). "A confession is involuntary if coerced either by physical intimidation or psychological pressure." *Id.* citing *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981). The key consideration in determining voluntariness is whether the defendant's will was overborne by law enforcement based on the totality of the circumstances. *Haswood*, 350 F.3d at 1027. Courts consider the following factors: age and intelligence of the defendant, whether the defendant was informed of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning by law enforcement, and the use of physical punishment such as sleep deprivation. *Id.*

There is no evidence that Defendant's confession was involuntary in this case. Defendant agreed to go to the FBI office to take the polygraph over the phone, drove himself with his wife to take the examination, and confirmed

verbally and in writing that he made his statements voluntarily and law enforcement did not trick him or force him to confess. The interview was conducted in a conference room connected to the lobby via an unlocked door where Defendant's wife sat. Defendant is over 50 years old and there are no indications he lacks the intelligence to understand the polygraph procedure. The recording of Defendant's confession demonstrates the agents were not threatening in their questioning--Defendant even says the agents were kind and respectful toward him on the recording. Finally, Defendant signed rights advisement forms stating his statements were voluntary and truthful, and affirmed the forms verbally on the recording. The forms explained the right to remain silent, to refuse the polygraph, not answer any individual questions, and to stop the interview at any time. The totality of the facts surrounding Defendant's confession leave the Court with no doubt that it was made voluntarily. A voluntariness hearing is thus not warranted in this case and Defendant's motion to suppress must be denied.

### C. Fifth Amendment *Miranda* Warning

A defendant's "fifth amendment right to counsel under *Miranda* does not vest until a defendant is taken into custody." *United States v. Hines*, 963 F.2d 255, 256 (9th Cir. 1992). Courts examine the totality of the circumstances in determining whether an individual is in custody for purposes of *Miranda*.

*Thompson v. Keohane*, 516 U.S. 99, 112 (1995). "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Id.*

Defendant was not in custody when he took the polygraph examination or when he confessed. Defendant arrived at the FBI office voluntarily, signed advisement of rights forms, and left the office freely after confessing. These circumstances do not establish a custodial situation. Even if Defendant was in custody, he was informed of his *Miranda* rights and waived them. Defendant's arguments under the Fifth Amendment fail.

**D. Sixth Amendment Right to Counsel**

Similarly, Defendant's contention that his Sixth Amendment right to counsel was violated because an FBI request for a polygraph is a critical stage criminal proceeding is unpersuasive. "The Sixth Amendment right to counsel, however, does not attach until the initiation of the first adversarial proceedings against the defendant." *Hines*, 963 F.2d at 257. A defendant's arraignment generally initiates the adversary proceedings against him as well as his concurrent Sixth Amendment rights. *Id.* The polygraph examination in this case was not a critical stage proceeding because Defendant had not been charged with or

arraigned for any crime. His Sixth Amendment right to counsel was not violated and his motion to suppress must be denied for the reasons stated herein. Therefore,

    IT IS ORDERED that Defendant's motion to suppress (doc. 15) is DENIED.

    DATED this 4th day of February, 2013.

*/s/ Dana L. Christensen*
Dana L. Christensen, District Judge
United States District Court